IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ERNEST J. GUTIERREZ,

    Plaintiff,

v.                                                                            Civ. No. 09-00664 BB/RLP

RON TORRES, *et al.*,

    Defendants.

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

    1.    This is a proceeding brought pursuant to 42 U.S.C. § 1983. Plaintiff is incarcerated at the Bernalillo Metropolitan Detention Center (MDC).  He alleges that his legal mail was misplaced or lost; that personal mail was returned to the senders; and that Defendants have conspired to violate his due process rights.  He claims he has exhausted his remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e.

    2.    The Court ordered Defendants to submit a *Martinez* Report [Doc. 24], addressing MDC's grievance policies; policies regarding incoming and outgoing mail to inmates; and to provide documentation concerning Plaintiff's allegations. Defendants have filed their *Martinez* Report.  *See* Doc. 27 & 28.

    3.    The documents submitted indicate that inmates are required to fill out and submit their grievances to the proper MDC personnel and that there should be one grievance form per complaint.  *See* Exhibit 1 [Doc. 28-9] to Exhibit I of the *Martinez* Report. Packages may not be received by inmates.  Exhibit 4 [Doc. 28-13] to Exhibit I.   Otherwise,

---

    [1] Within 14 days after a party is served with a copy of the Magistrate Judge's Report and Recommendation (R&R) that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to the R&R in the United States District Court.  A party must file any objections within the 14-day period allowed if that party wants to have appellate review of the R&R. If no objections are filed, no appellate review will be allowed.

the volume of mail is unregulated. *Id.*

4. Plaintiff filed two grievances concerning mail. *See* Exhibit 3 [Doc. 28-12] to Exhibit I. In Grievance #017172 he complained that some of his legal mail had been opened and that other items from family and friends had been returned. The Response stated that the legal mail had been opened accidentally and that the other items returned must have been in violation of BCDC policy. *Id.* at page 1 of 4. In his grievance appeal, Plaintiff raised for the first time that some outgoing mail had not been processed. He was advised that he could not raise a new issue on appeal and that he must file a separate grievance. *See* Appeal Form [Doc. 28-12], page 2 of 4.

5. Grievance #016717 again raised the issue of having mail sent by family and friends returned. *See* [Doc. 28-12], page 4 of 4. He was advised that the records had been checked and that these mailings constituted unauthorized items. *Id.* at page 3 of 4.

6. It appears from the foregoing that the two issues that were exhausted were (1) the opening of legal mail; and (2) the facility's returning items to the senders.

7. A prisoner's claims about the non-receipt of mail, legal or otherwise, raises First Amendment concerns of access to the courts and free speech, respectively. To prevail on a denial of access claim a plaintiff "must show that non-delivery of his legal mail resulted in actual injury by frustrating, impeding, or hindering his efforts to pursue a legal claim." *Wardell v. Duncan*, 470 F.3d 954, 959 (10th Cir. 2006) (internal quotation marks, brackets and citations omitted). "Conclusory allegations of injury in this respect will not suffice." *Id.*

8. As the Court reads Plaintiff's claims, his legal mail had been opened and then resealed. He does not claim he did not receive the mail. Moreover, he has failed to state

with any specificity as *what* legal materials he claims were mishandled or *how* those incidents prejudiced his case.[2] Because Plaintiff's claims are conclusory and fail to show the necessary prejudice, he cannot prevail on his First Amendment claim of denial of access to the courts.

10. The First Amendment may also be implicated by restrictive prison regulations that are not "reasonably related to legitimate penological interests . . . ." *Id.* at 959-60. (internal quotation marks and citations omitted). Four factors are examined in this regard:

> First, is there a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it? Second, are there alternative means of exercising the right that remain open to prison inmates? Third, what impact will accommodation of the asserted constitutional right have on guards and other inmates, and on the allocation of prison resources generally? And fourth, are ready alternatives for furthering the governmental interest available?

*Id.* (quoting *Turner v. Safley*, 482 U.S. 78 (1987)).

11. Defendants have attached the Affidavit of Faith Montoya to their *Martinez* Report at Exhibit K. Ms. Montoya states that all personal mail is opened and inspected for contraband. "Contraband items include sexually explicit or violent images, weapons, drugs, books, other items deemed unsafe, and packages, which are automatically returned to

---

[2] The Court notes that Plaintiff alleges some outgoing legal mail was either mailed without authorization or that he failed to receive important legal mail, and this failure caused him to lose his case. The Affidavit of Roseanna Archuleta, Exhibit I, explains that while Plaintiff complained about the mail processing, he chose not to file a grievance. Therefore, these claims are not exhausted under the PLRA. Moreover, the Notice of Proposed Summary Disposition issued by the New Mexico Court of Appeals, Exhibit H, does not indicate any issues with a failure of proof, *i.e.*, that it was missing important documents. And, as Defendants point out, Plaintiff never raised any of these "missing legal documents" to any state court. Finally, the Court notes that on the Detention Center's Mail Log, Exhibits K2a and K2b [Doc. 28-20], 1-17, Plaintiff frequently signed for legal and other mail, sometimes containing money, that he received.

sender without being opened." *Id.* at ¶ 3.  She further defines "packages" as: "any item exceeding the size of a manila envelope, any items wrapped in bubble wrap, and/or items sent in postal tubes."  Money orders are returned to the sender when they exceed $50.00 (Western Union) or $100.00 (all other money orders), or when the inmate is not identified on the order.  *Id.*

12. Defendants have not set forth through an affidavit giving the specific reasons for these regulations (*e.g.*, why is *any* package returned without regard to content; why is anything in bubble wrap or a postal tube returned; and why is a Western Union money order limited to $50.00?), although it may be assumed that officials are concerned about unauthorized bartering, smuggling, or other activities within the facility that could endanger the guards' or inmates' safety.

13. In any event, the only specific claim Plaintiff makes is that a money order was returned to the sender.  It may be assumed that the order was in excess of $50.00 (Western Union) or $100.00 (all others); he did log in and receive money on March 3 and June 9, 2009 in lesser amounts.  Because Plaintiff only made a specific reference to a return of a money order and does not identify the alleged "packages" that were returned to senders, the Court is unable to analyze his claims under all of the *Turner* factors.

<u>RECOMMENDED DISPOSITION</u>

I recommend that this case be dismissed with prejudice.

_____
Richard L. Puglisi
Chief United States Magistrate Judge